IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| **LOUISE HAYES ODUM** § | | |
| *Plaintiff* § | | |
| § | | |
| v. § | CIVIL ACTION NO. 3:18-cv-00193 | |
| § | | |
| **BLUE CROSS AND BLUE SHIELD** § | | |
| **OF TEXAS, INC.,** § | | |
| *Defendant* § | | |

### PLAINTIFF'S FIRST AMENDED ORIGINAL COMPLAINT

1. PLAINTIFF is LOUISE HAYES ODUM, (erroneously called Louise Odom Hayes in Plaintiff's Original Petition filed in the District Court of Brazoria County, Texas) who is a citizen of the United States and a resident of Brazoria County, Texas.

2. Defendant, Health Care Service Corporation, a mutual legal reserve company operating in Texas as Blue Cross and Blue Shield ("HCSC"), is a corporation incorporated in a state foreign to Texas. It is already before this Honorable Court inasmuch as it was filed in Texas District Court and initiated Removal Proceedings related to its pendency herein.

3. This Court has jurisdiction in that the case was removed from State Court.

4. Venue is proper in this district because this case was properly removed from a Texas District Court presiding within this District.

5. All conditions precedent have been performed or have occurred.

6. Defendant is an insurance carrier providing health insurance to its subscribers to Texas residents. Late in 2013 or early 2014, Defendant issued its PPO Select Choice Preferred Provider Plan providing comprehensive major medical insurance to Plaintiff, such

1

that coverage under such policy of health insurance would commence no later than January 01, 2014.

7.      Accordingly, said policy was in force at all relevant times in which the operative facts of this claim occurred. Plaintiff had been covered by successive policies of health insurance issued by the Defendant which were continuously in force for several years before the issuance of the above-mentioned policy which is involved in this suit; such that there was no gap in the health insurance coverage provided for Plaintiff by Defendant for the entire length of the terms of all these policies.

8.      Plaintiff has suffered from glaucoma commencing in 2010 and has been treated for such condition since that time. As a vital part of her treatment, she has received since the onset of this condition, Lumigan Eye Drops 0.01% which were self-administered daily in accordance with her physician's prescription. The quantity of this medication necessary to fulfill the prescription was 5 ML per prescription. This is the amount which was dispensed by Plaintiff's pharmacist and paid for by Defendant for the first filling under the involved policy which occurred in March 2014. The number of drops per ML is set by universally accepted, pharmaceutical industry standards. The first filling dispensed by Plaintiff's pharmacist was 5 ML which was sufficient to fulfill her physician's prescription, and which corresponded with industry standards. This occurred in March 2014 and Defendant paid the pharmacy in accordance with the involved policy.

9.      The next filling of the prescription was dispensed on May 05, 2014, but the volume of medication had been reduced to 2.5 ML which was fifty percent (50%) less than the 5 ML dispensed in March 2014 which Plaintiff had long been accustomed to receiving

and administering to herself. This reduction represented a decrease of fifty percent (50%) of the volume which would have complied with industry standards.

10. Sometime later, when Plaintiff picked up the prescription, she for the first time, noticed the drastic reduction in her medication. When she made inquiry about the apparent discrepancy to her pharmacist, it was reported to her that representatives of Defendant informed them that Defendant would henceforth pay only for the reduced volume of medication and no more. Thereafter, Plaintiff, herself took the matter of the reduction up with Defendant's representatives and was told the same thing and, by way of explanation, was informed that their personnel in their own laboratories had determined that the volume of medication which she had taken successful for years and which complied with industry standards, was not required to fulfill her prescription and that fifty percent (50%) of the usual amount would suffice for this purpose.

11. In this way Defendant seeks to justify, apparently without consultation with anyone, and without so much as giving notice to Plaintiff of its arbitrary reduction of the volume of Lumigan by half from 5 ML to 2.5 ML.

12. During the remainder of the term of the policy until the last filling on December 06, 2014, Plaintiff received only 2.5 ML of Lumigan for the sole and only reason that it was all Defendant would provide. Very significantly, she changed insurance carriers and the new carrier immediately increased the volume of Lumigan to 5 ML in accordance with the same prescription and in keeping with industry standards.

13. After the reduced amount of Lumigan Eye Drops was available to Plaintiff, she was constantly attempting to stretch the amount of medication to last from filling to filling. Try as she may, there were significant amounts of time between fillings that Plaintiff

3

had to go without her medication. Moreover, by trying to limit the number of drops used per application, there were numerous occasions that Plaintiff felt that the drops she did administer did not enter her eye effectively. Thus, Plaintiff, for a period of seven (7) months until the expiration of the involved policy and its replacement by another policy issued by another carrier, was forced to try to get by using a plainly deficient amount of her medication.

The effect of this course of events had catastrophic effects to Plaintiff's visual health as hereafter alleged.

14.     Plaintiff would show than the sequence of events hereinabove alleged constitutes a gross and flagrant breach of contract on the part of the Defendant and the consequences of which Defendant should respond in money damages as hereafter alleged. The policy of insurance does not specifically provide for the volume for the covered medication. Rather, the volume for prescriptions for this type of medication is set by universally recognized standards of pharmaceutical practice which are accepted and understood by all parties concerned and which are steadfastly adhered to by responsible health insurance carriers.

15.     To disregard the obligations created by a policy thus understood, is to breach the policy contract which leaves the policy holder inadequately medicated. This is what the Defendant has done; thereby, giving rise to the liability for the damages Plaintiff has suffered by reason of Defendant's failure to fulfill its contractual responsibilities.

16.     Texas law contemplates that an established custom or usage (such as the industry standard mentioned above) which is known to the contracting parties is incorporated into the contract by implication and, therefore, is subject to being breached like any other

4

contractual provision. Further, as alleged above, Plaintiff was covered by two other health insurance policies issued by the Defendant prior to the commencement date of the subject policy. The first such policy was group health coverage connected with Plaintiff's employment. The second was a COBRA policy which went into effect upon the secession of her employment. During the pendency of the coverage provided by these policies, Plaintiff was taking Lumigan pursuant to the same prescription. Very significantly, Defendant paid for the filling of the said prescription all of which prescriptions were filled with 5 ML of Lumigan.

17.   Thus, when Plaintiff entered into the subject policy, she had a history of at least more than one year during which Defendant had supplied Lumigan at the volume of 5 ML per prescription. Therefore, Plaintiff was led to believe and was justified in believing that the same volume would be supplied throughout the term of the subject policy only to have the Defendant suddenly and deliberately reduce the volume of medication which was unfair to her in the extreme and a point blank disregard of its bargain to her.

18.   Plaintiff would further show that as a direct consequence of Defendant's breach of its obligations under the subject policy of insurance, she has suffered damages, which are in law compensable and which constitute the subject matter of this lawsuit. Defendant has experienced an ever increasing diminution of her vision in both eyes which has necessitated continued medical treatment which involved extensive medical expenses which would otherwise have been unnecessary. In fact, one of her eyes has been lost and it has become necessary for an artificial eyeball to be put in place. The vision of the other eye has deteriorated to such an extent that she can no longer read or drive a car such that for all intents and purposes, she is totally incapacitated and unable to function productively. Indeed,

she has difficulty performing the basic tasks of life to care for herself. She can only look forward to eventual, total blindness. This pitiful situation is particularly acute because she is now unable to support herself whereas before, she was a teacher and scientific researcher in her chosen field. As a direct consequence of her condition, the life she had made for herself has been taken away by reason of Defendant's wanton and irresponsible refusal to honor its solemn contractual responsibilities.

19. By reason of this, Plaintiff has suffered legally recognized money damages in an amount not less than $6,500,000.00.

WHEREFOR PREMISES CONSIDERED, Plaintiff Louise Hayes Odum respectfully prays that Defendant Blue Cross and Blue Shield of Texas, Inc. be cited to appear and answer herein and that upon final trial hereof that she recover $6,500,000.00 and for such other and further relief, both general and special, in law or in equity, to which she may show herself justly entitled.

Respectfully submitted,

||| Jimmy D. Ashley |||

_____
Jimmy D. Ashley
State Bar No. 1378000
P.O. Box 55625
Houston, TX 77255-5625
Tel:    713-521-0218
Fax:    713-524-4038
Email:       ashleyjd37@gmail.com1

**ATTORNEY FOR PLAINTIFF
LOUISE HAYES ODUM**